

# NUMBER 13-24-00525-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**NICHOLAS JOHNSON,**                                   **Appellant,**

**v.**

**ENGINEERED PERFORMANCE RACING,**
**A DOMESTIC FOR-PROFIT COMPANY,**
**AND MITCHELL WILSON,**                           **Appellees.**

---

## ON APPEAL FROM THE 413TH DISTRICT COURT
## OF JOHNSON COUNTY, TEXAS

---

# MEMORANDUM OPINION

**Before Justices Silva, Peña, and Cron**
**Memorandum Opinion by Justice Peña**

Appellant Nicholas Johnson appeals the trial court's judgment awarding him

$33,508 in damages and no attorney's fees and costs. By a single issue, Johnson argues

that the trial court erred in refusing to award him attorney's fees and costs.[1] We reverse in part, remand in part, and affirm in part.

## I. BACKGROUND

Johnson hired appellees Engineered Performance Racing (EPR) and Mitchell Wilson, the owner of EPR, to build a performance racing engine for his "1995 Nissan 300zx." The engine was built and delivered to Johnson but failed to perform upon installation. The engine was subsequently returned and appellees made attempts to correct the issues. However, upon re-delivery and re-installation, the engine once again failed mechanically. A third party who manufactured parts that were used in the engine ran tests and determined that the failures were due to "the reconditioning of the engine block/ or improper assembly of the block (engine rebuilder)." Johnson also reviewed the specifications sheet that was provided when the engine was delivered and noticed that the specifications for the engine were incorrect. When he contacted appellees for repairs under the warranty, appellees claimed the specifications were correct but the specification sheet contained "clerical error." Finally, appellees disclaimed responsibility for the engine failure and alleged that "other issues" caused the engine to fail.

On February 14, 2023, Johnson filed his original petition against appellees alleging claims for breach of contract and breach of express warranty under Texas common law and the Texas Deceptive Trade Practices Act for their refusal to repair the engine. *See* TEX. BUS. & COM. CODE ch. 17. A jury trial commenced on June 3, 2024. Following a

---

[1] This case is before the Court on transfer from the Tenth Court of Appeals pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer). We are bound by the precedent of the transferring court to the extent that it differs from our own. *See* TEX. R. APP. P. 41.3.

verdict in favor of Johnson, he was subsequently awarded $23,508 for past damages and $10,000 for future damages.

Before trial, the parties agreed to submit the issue of attorney's fees and costs to the trial court. On June 14, 2024, Johnson filed his combined motion for assessment of attorney's fees, expenses, and entry of judgment. The following exhibits were attached to his motion: (A) the demand letter Johnson initially sent to appellees offering to resolve the matter for "$27,650.28 as compensation and $3,051.00 in attorney fees" which appellees refused; (B) appellees response to the demand letter stating that "EPR is not convinced that it did anything that le[]d to the alleged failure of the Engine"; (C) Johnson's reply to the rejection of the demand "address[ing] [appellees'] concerns and provid[ing] [appellees] with some of the relevant evidence" in hopes of "avoiding unnecessary and costly litigation"; (D) an affidavit from Johnson's trial counsel discussing"; (E) the charge of the court; (F) an affidavit from Keelin Code with attached invoices of Johnson's incurred attorney's fees; and (G) invoices of Johnson's incurred costs. Johnson explained that exhibits (F) and (G) were his trial counsel's "usual business records" and they were recorded contemporaneously as services were provided. Johnson argued in his motion that his assessment of attorney's fees and costs complied with the factors set out in *Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

Appellees filed a response, arguing that Johnson "failed to satisfy his evidentiary burden to justify an award of fees and, at a minimum, seeks fees that are not reasonable and necessary under the circumstances."

An evidentiary hearing was held regarding Johnson's motion on August 30, 2024. He specifically argued that an award of attorney's fees under Section 38.001 was proper

3

because Section 38.005 "calls for a liberal construction of the rules to promote the purposes of trying to encourage contracting parties to pay their just debts." *See* TEX. CIV. PRAC. & REM. CODE §§ 38.001, 38.005. During the hearing, Johnson's counsel, Alyson Oliver, testified to the "novelty and difficulty" of proving the claims alleged because Johnson's claims required trial counsel "to pretty much learn the interworking of a racing engine." Oliver further testified that the skill required to perform the legal services properly was high and that the jury returned a "verdict essentially giving [Johnson] the money that he spent on this racing engine that never worked." Oliver also testified that taking on this case restricted the firm to the effect that "[the firm's attorneys] couldn't pursue other cases during that time period" and that the hourly rates were $600 per hour—for the firm partner who supervised the trial attorney—and $300 an hour for the attorney who "tried the majority of the case."

Johnson pointed the trial court to exhibits F and G attached to his combined motion which documented that he incurred attorney's fees in the amount of $101,073 and costs in the amount of $18,094.54 and argued that the reasonableness of his fees were in compliance with *Arthur Andersen*, *see* 945 S.W.2d at 818, and *Rohrmoos Venture v. UTSW, DVA Healthcare, LLP*, 578 S.W.3d 469, 491 (Tex. 2019). Exhibit K, the Economics of Law Survey, and the invoices, exhibits F, and G, reflect: (1) the particular services performed, (2) who performed those services, (3) when the services were performed, (4) the amount of time required to perform the services, (5) the actual billable rate for each person performing the services at the time the services were performed and (6) how the firm established the attorney hourly rates. Finally, Olliver testified that the time management system the firm uses to keep track of the time spent and expenses spent

4

on the case are kept "contemporaneously with the work performed."

Appellees did not deny that recovery of attorney's fees under Section 38.001 was proper. Instead, appellees focused their argument on (1) whether the hourly rates Johnson claimed as attorney's fees were reasonable in light of the fact that Johnson produced no evidence of customary fees in Johnson County (appellees claimed that the trial court could consider "either increasing or decreasing the fee" based on "the fee customarily charged in the locality for similar legal services"); (2) whether Oliver was qualified to testify about "reasonable fees" in Texas because "[a]ll of the appointments that she references are not in the State of Texas" and thus she did not meet the *Rohrmoos* standard because "you have to specifically [and] actually analyze these different factors and specifically tie it to your fee request . . . [and s]he didn't do that"[2] and (3) ultimately the affidavit submitted by Johnson's counsel is tantamount to a statement such that, "'I find these fees to be reasonable and necessary.'" Appellees argued that because the requested amount of attorney's fees was "not properly proven," no attorney's fees should be awarded.

The trial court took the matter under advisement and on September 5, 2024, it entered a final judgment awarding zero attorney's fees. The trial court made no findings of fact and conclusions of law and none were requested by the parties.

## II.    DISCUSSION

On appeal, Johnson argues that in his brief to the trial court and during the hearing, he "laboriously worked through the lodestar analysis and *Arthur Anders[e]n* factors,

---

[2] Appellant testified that she has "been appointed by courts to complex litigation from California to Maine, from Mississippi to Michigan" and "serve [on] the time and expense committee on multi-district litigation matters . . . .reviewing attorney fees and costs from attorneys across the nation, including here in Texas."

supplying evidence as to each and every factor." *See Arthur Andersen*, 945 S.W.2d at 818; *Rohrmoos*, 578 S.W.3d at 491. Appellees contend that (1) "[t]he trial court's ruling on attorney's fees properly rests on its implied findings that [Johnson] failed to present legally competent evidence to support an award of attorney's fees," and (2) Johnson failed to meet his burden of proof; thus, the award of attorney's fees under Chapter 38 is not mandatory.

## A. Applicable Law

Texas Civil Practice and Remedies Code Section 38.001 provides that "[a] person may recover reasonable attorney's fees . . . in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." TEX. CIV. PRAC. & REM. CODE § 38.001(b)(8). The Supreme Court of Texas has held that a breach of warranty claim falls within the meaning of Section 38.001(b)(8). *Med City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 62–63 (Tex. 2008). "If attorney's fees are proper under section 38.001(8), the trial court has no discretion to deny them." *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex. 2009) (citing former version of Section 38.001 of the Texas Civil Practice and Remedies Code); *see Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998) (holding that statutes providing that a party "may recover" attorney's fees are not discretionary). Additionally, the Texas Civil Practice and Remedies Code Section 38.003 states that "attorney's fees for a claim of the type described in [Section] 38.001 are reasonable" but "[that] presumption may be rebutted." TEX. CIV. PRAC. & REM CODE § 38.003.

In *Arthur Andersen*, the Supreme Court of Texas set out the "[f]actors that a factfinder should consider when determining the reasonableness of a fee" as follows:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

945 S.W.2d at 818.

The Supreme Court of Texas in *Rohrmoos* explained that "[t]he lodestar method . . . is a focused and objective analysis of whether the fees sought are reasonable and necessary yielding a base figure that reflects most *Arthur Andersen* factors and is thus presumptively reasonable. But that figure is subject to adjustment if the presumption is overcome by other factors." 578 S.W.3d at 496. In describing the lodestar method, the *Rohrmoos* court stated that:

> Under the lodestar method, the determination of what constitutes a reasonable attorney's fee involves two steps. First, the [fact finder] must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. The [fact finder] then multiplies the number of such hours by the applicable rate, the product of which is the base fee or lodestar. The [fact finder] may then adjust the base lodestar up or down (apply a multiplier), if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case.

*Id*. at 494 (quoting *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012)).

**B.  Standard of Review**

7

A trial court's decision to either grant or deny attorney's fees is reviewed under an abuse of discretion standard, and the amount awarded is reviewed under a legal sufficiency standard. *EMC Mortg. Corp. v. Davis*, 167 S.W.3d 406, 418 (Tex. App.—Austin 2005, pet. denied) (citing *Allison v. Fire Ins. Exch.*, 98 S.W.3d 227, 262 (Tex. App.—Austin 2002, pet. granted, judgm't vacated w.r.m.by agr.)). "A trial court abuses its discretion when it acts without reference to any guiding rules or principles." *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex. 2002) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). "When a trial court does not issue findings of fact or conclusions of law, as in this case, 'all facts necessary to support the judgment and supported by the evidence are implied.'" *Gray, Ritter & Graham, PC v. Goldman Phipps PLLC*, 511 S.W.3d 639, 653 (Tex. App.—Corpus Christi–Edinburg 2015, pet. denied) (quoting *BMC Software Belgium, N.V.*, 83 S.W.3d at 795); *see also Sprute v. Levey*, No. 04-14-00358-CV, 2015 WL 4638298, at *7 (Tex. App.—San Antonio July 15, 2015, no pet.) (mem. op.) (holding that where the trial court did not expressly state its reason for a reduced fee, "we must infer that the trial court found 'some of the claimed fees to be unreasonable, unwarranted, or some other circumstances which [made] an award of the uncontroverted claim wrong'" (quoting *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990) (per curiam))). "When reviewing matters reserved for the trial court's discretion, a court of appeals may not substitute its own judgment for that of the trial court." *Garrod Invs., Inc. v. Schlegel*, 139 S.W.3d 759, 767 (Tex. App.—Corpus Christi–Edinburg 2004, no pet.) (citing *Flores v. Fourth Ct. of Appeals*, 777 S.W.2d 38, 41 (Tex. 1989)).

C.    Analysis

Johnson provided, through briefing and live testimony, evidence as to each of the *Arthur Andersen* factors in developing his lodestar analysis. He established that his determination of his hourly rate for the attorneys on the case was based on surveys "from reviewing billing records for attorneys across the nation, including Texas" and provided the trial court itemized billing records for work done on the case by each individual "compiled contemporaneously with the work and the costs expended." We conclude Johnson produced sufficient evidence to satisfy the *Arthur Andersen* factors.

"It is presumed that the usual and customary attorney's fees for a claim of the type described in Section 38.001 are reasonable." TEX. CIV. PRAC. & REM. CODE § 38.003. Appellees did not contest whether attorney's fees were appropriate under the statute, instead, appellees argued that the fees were improperly calculated because none of the fees included in the survey included customary fees from Johnson County. Appellees also questioned the legitimacy of the rate of each attorney in the case and some of the work provided and billed by non-attorneys.

The "locality argument" wherein appellees contend that Johnson's attorney's fees are improper because the survey of customary attorney's fees did not include fees specific to Johnson County was addressed in *Brazos Cnty. Water Control & Improvement Dist. No. 1 v. Salvaggio*, 698 S.W.2d 173, 178 (Tex. App.—Houston [1st Dist.] 1985 writ ref'd n.r.e.). The First Court of Appeals held that "the trier of fact should consider the amount charged by other attorneys in the general locality or area doing similar work." *Id*. The court rejected the argument that the locality inquiry was limited to a "specific county," finding that such a requirement "would be unduly restrictive." *Id.*; *see also Lola Barker v. Hurst*, 632 S.W.3d 175, 190 n.10 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (rejecting

9

the argument that "the trier of fact should consider the amount charged by other attorneys in the locality doing similar work").

Because the trial court awarded zero attorney's fees and zero costs and made no findings of fact and conclusions of law, we apply the implied findings doctrine. *BMC Software Belgium, N.V.*, 83 S.W.3d at 795. Consequently, all fact findings necessary to support the trial court's judgment are implied. *Id.* However, when the appellate record includes a reporter's record, those implied findings "are not conclusive and may be challenged for legal and factual sufficiency." *Id*. Thus, the appellate court will uphold the zero-fee ruling on any basis supported by the evidence, but the appellant may challenge the sufficiency of the evidence underlying those implied findings.

In *Midland Western Building. L.L.C. v. First Serv. Air Conditioning Contractors, Inc.*, 300 S.W.3d 738 (Tex. 2009) (per curiam), the Supreme Court of Texas held that "an award of no fees was improper in the absence of evidence affirmatively showing that no attorney's services were needed or that any services provided were of no value." *Id.* at 739 (first citing *Smith*, 296 S.W.3d 548; and then citing *Cale's Clean Scene Carwash, Inc. v. Hubbard*, 76 S.W.3d 784, 787 (Tex. App.—Houston [14th Dist.] 2002, no pet.)).

This principle was elaborated in *State v. Buchanan*, 572 S.W.3d 746 (Tex. App—Austin 2019, no pet.), where a jury verdict of zero dollars on mandatory attorney's fees was held to be "against the great weight and preponderance of the evidence" when the opposing party's only challenge was that too many hours were spent—without affirmatively proving that no services were needed or were valueless. *Id*. at 751. The *Buchanan* court held that "a zero award for attorney's fees is proper only if the evidence (1) failed to prove (a) that any attorney services were provided, or (b) the value of the

10

services provided; or (2) affirmatively showed that no attorney's services were needed or that any services provided were of no value." *Id*. In this case, Johnson produced evidence to the trial court demonstrating attorney services were provided as well as the purported value of said services. See id.

In *Lola Barker*, the court of appeals found that an award representing only seventeen percent of a proven lodestar was "arbitrary, unreasonable, and without reference to guiding principles, because it bears no relationship to the uncontroverted evidence of attorney's fees incurred." 632 S.W.3d at 194. Here, Johnson produced evidence purporting to show that he incurred $101,073.00 in attorney's fees as well as evidence demonstrating $18,094 in costs. *See Rohrmoos*, 578 S.W.3d at 491. Accordingly, the trial court's award of zero fees and zero costs bears no relationship to the uncontroverted evidence of the attorney's fees incurred by Johnson. *See id*. We hold that the trial court's award of zero attorney's fees and zero costs was without reference to any guiding principles. See *Carpenter*, 98 S.W.3d at 687. We sustain Johnson's sole issue.

### III.    CONCLUSION

We reverse the portions of the trial court's judgment awarding no attorney's fees and costs and remand for a new trial on those issues. The judgment is affirmed in all other respects.

L. ARON PEÑA JR.
Justice

Delivered and filed on the
9th day of July, 2026.

11